**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| **BRENDA WYNN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:10CV734 |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Brenda Wynn, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 13) and motion to remand (docket no. 14) be DENIED; that Defendant's motion for summary judgment (docket no. 16) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case. Rules 5 and 7(C).

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI on March 8, 2006, claiming disability due to lupus[2] and heart problems, with an alleged onset date of September 1, 2005. (R. at 232, 252.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[3] (R. at 182; 204.) On June 12, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 156-74.) On November 20, 2009, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where, based on her age, education, work experience and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 144-55.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-4.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.

---

[2] Lupus refers to "numerous types of localized destruction or degeneration of the skin caused by cutaneous diseases." Dorland's Illustrated Medical Dictionary 1093 (31st ed. 2007).

[3] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[4] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[5] based on an assessment of the claimant's residual functional

---

[4] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. c 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. c 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[5] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

capacity (RFC)[6] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

---

[6] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 146.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of status post mitral valve replacement,[7] coronary artery disease,[8] congenital heart block – status post pacemaker,[9] and systemic lupus erythematosus,[10] but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 146-48.) The ALJ next determined that Plaintiff had the RFC to perform the full range of sedentary work. (R. at 148-54.)

The ALJ then determined at step four of the analysis that Plaintiff could perform her past relevant work as a data entry clerk in Medicaid and a microfilm specialist, because such work did not require activities precluded by Plaintiff's RFC. (R. at 154.) Because the ALJ determined that Plaintiff was capable of performing her past relevant work, it was unnecessary to pursue the analysis to step five in which the Commissioner would have had the burden to show that, considering the claimant's age, education, work experience, and RFC, the claimant was capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f); 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir.

---

[7] "Pertaining to the left atrioventricular valve." Dorland's Illustrated Medical Dictionary 1188 (31st ed. 2007).

[8] "[A]therosclerosis of the coronary arteries, which may cause angina pectoris, myocardial infarction, and sudden death. Dorland's Illustrated Medical Dictionary 538 (31st ed. 2007).

[9] Referring to an impairment of conduction of an impulse in heart excitation originating before birth. Dorland's Illustrated Medical Dictionary 410, 838 (31st ed. 2007).

[10] Also known as "antiphospholipid syndrome," it involves "a chronic, inflammatory, often febrile multisystemic disorder of connective tissue that proceeds through remissions and relapses." Dorland's Illustrated Medical Dictionary 1095 (31st ed. 2007).

1981). Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 17.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that: (1) it was irrational for the ALJ to rely on the consulting physician's opinions; and (2) the ALJ did not set forth a complete RFC analysis. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 21-31.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 15-20.)

### A. Substantial evidence supports the ALJ's conclusions regarding the opinion evidence.

Plaintiff contends that it was "irrational" to rely on the consulting physicians' opinions, as they never examined Plaintiff and did not have all of her medical records. (Pl.'s Mem. at 21.) Plaintiff argues that the consulting physicians' opinions are "egregiously incomplete" and that "no reasonable person" would find the opinions to be credible. (Pl.'s Mem. at 22-24.) Plaintiff further asserts that the ALJ committed legal error as "clearly he did not consider objective medical facts, the additional medical records in the file dated after August of 2006, in the decision." (Pl.'s Mem. at 25.) Plaintiff contends that a review of such records leads to the "only rational conclusion that there were more limitations than just sedentary work." (Pl.'s Mem. at 25.)

The Court is compelled to note that the ALJ conducted an exhaustive review of *all* of Plaintiff's medical evidence, *including* records dated after August 2006. (R. at 150-54.) Plaintiff's attempts to minimize the ALJ's four-page assessment of her medical history are not

7

persuasive. Though it is clear that Plaintiff does not agree with the ALJ's decision, such disagreement should not lead to the mischaracterization of the ALJ's opinion.

The Court notes that ALJs are required to weigh consulting physicians' opinions, even if they have not examined the claimant. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i); see also Rives v. Astrue, 2010 WL 2944591 at *4 n.7 (E.D. VA April 12, 2010). Therefore, Plaintiff's argument that it was irrational to rely on such opinions only because they did not examine Plaintiff is rejected.

As to the "missing" records that Plaintiff contends are of upmost importance, and without such the physicians' opinions should be disregarded, Plaintiff has failed to explain what the records contain, how the records would change the physicians' opinions, and – most importantly – Plaintiff has failed to submit these allegedly critical records. It is unclear, then, how the absence of these records has prejudiced Plaintiff. Further, it appears that the "missing" records consist, in fact, of only one page. (R. at 337-39, 441.) The Court is not persuaded that one additional page of records, if it is indeed missing, is enough to overturn the ALJ's decision when he relied on dozens of treatment records in rendering his opinion. Further, the "missing" record is apparently from a rheumatology clinic. Notes that were received from that clinic indicate that Plaintiff did not require consistent treatment from the attending rheumatologist. (R. at 338.) Furthermore, other notes from the clinic (Boydton Medical Center) indicate that Plaintiff was only followed sporadically by Dr. Rubenstein. (R. at 543.) Plaintiff, herself, also insisted that most of her lupus care was attended to at Boydton Medical Center, but the attending physician did not observe any records from the rheumatology department during his involvement. (R. at 583.)

Furthermore, Plaintiff has been represented at all times relevant to this appeal, and counsel continued to update the file after the consulting physicians rendered their opinions. The ALJ acknowledged counsel's effort at several junctures, including step three when he said, "[n]othing in the record developed since the review by the disability determination service medical sources convinces the undersigned that the claimant has such an impairment or combination of impairments." (R. at 147-48.) Further, in determining that Plaintiff retained the RFC to perform sedentary work, the ALJ said that "no further reduction of the claimant's [RFC] is justified *by the present record*." (R. at 154, emphasis added.) Accordingly, because it is clear that the ALJ considered all the evidence of record, including the evidence received after the opinions were issued, substantial evidence supports his decision that the opinions were "well supported by the record and consistent with the record as a whole." (R. at 154.) Even though it may be that the state physicians were not privy to *all* the medical evidence of record, the fact remains that the ALJ was required to weigh their opinions. See 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). Furthermore, it must be noted that *no* physician offered a contradictory opinion.

The Court has considered the respective opinions, and it cannot be said that the opinions are "egregiously incomplete" when one considers all the evidence of record, as the ALJ did. While the Court does not feel the need to address all of the medical evidence, as the ALJ has already done so in a complete fashion, the Court will nevertheless address, for purposes of clarity, Plaintiff's specific claims that she suffered from continued complications from heart surgery and lupus.

With regard to Plaintiff's "continued complications" from heart surgery, the Court notes the recorded instances of repeated noncompliance with her medication regime. Though Plaintiff

9

claims that she takes her medications "faithfully," the medical record reflects otherwise.[11] Throughout the relevant period, Plaintiff was noted to be non-compliant with both treatment and her medication regime on several occasions. (R. at 7, 121, 136, 138, 318-19, 321-22, 522, 546-47, 549-50, 553, 574-75, 579, 582.) In fact, Plaintiff continued to smoke half a pack of cigarettes per day after her heart valve replacement surgery, and continued to defy physician recommendations to comply with her medications, even after being warned that non-compliance could cause significant medical problems. (Id.) Plaintiff's physicians had multiple discussions with her about the issue, and even noted that Plaintiff had 100% assistance at the Medical College of Virginia and could therefore receive ninety-day supplies of her medications for free. (R. at 546, 550.) Plaintiff's noncompliance issues were documented as late as February 11, 2010,[12] when she was warned that there were "potentially serious risks" involved with taking her medication without careful monitoring, and that if she did not reschedule a blood test appointment she would be discharged from the clinic. (R. at 7.) Such noncompliance is unsettling, and is certainly indicative of a person who does not suffer from such severe impairments as to preclude her from all employment.

With regard to the evidence received after state physicians opined that Plaintiff was capable of performing sedentary work, substantial evidence supports the ALJ's decision that such evidence did not establish disability. In April 2007, after a breast biopsy, it was noted that Plaintiff was doing well with no complaints. (R. at 462.) Plaintiff was admitted to the hospital with pneumonia in January 2008, where she was administered oxygen. (R. at 574-75.) The most

---

[11] The ALJ found that Plaintiff was not entirely credible. Plaintiff does not challenge this finding.

[12] Though this date falls outside the relevant time period, the Court notes that it is illustrative of Plaintiff's continued noncompliance, which is already well-established by the remainder of the record.

recent treatment record the ALJ had was from a Dr. Rachel I. Huot in May 2008, when Plaintiff presented "[needing] disability forms filled out." (R. at 582.) Notes reflect that Plaintiff complained that Tylenol, Advil, and Aleve (which she was not directed to take) were not assisting her. (R. at 582.) Plaintiff's blood pressure was elevated, but she indicated that she had not taken her medications that day. (R. at 582.) Plaintiff was continued on her medications and advised that she may get better results with her disability forms if she saw a specialist. (R. at 583.) A Dr. Huot also advised Plaintiff's counsel that she did not have the information needed to fill out the forms. (R. at 584.) Dr. Huot asked Plaintiff's counsel to contact the sources who did have the necessary information, but the record does not reflect whether or not those sources were, in fact, contacted. (R. at 584.)

As to the evidence dated after June 2008 (when the ALJ issued his decision), the Appeals Council noted that the evidence was not relevant to the time period between Plaintiff's alleged onset date and the ALJ's opinion. Plaintiff did not challenge the Appeals Council's decision on the matter. Accordingly, the records are not relevant in this appeal. If Plaintiff feels that her condition has deteriorated since June 27, 2008, the appropriate remedy is to file a new application for benefits.

The ALJ did not "blindly" accept the opinions of the consulting physicians. The Court notes that Plaintiff's repeated history of noncompliance is especially persuasive in supporting the ALJ's decision that her impairments do not preclude her from all substantial gainful activity. Also, as the ALJ noted, "a limitation to sedentary work is a substantial reduction from the average working aged person's functional capacity." (R. at 154.) Because the ALJ considered and conducted an exhaustive review of all the evidence before making his decision, it is the

11

Court's recommendation that the decision is supported by substantial evidence and should therefore be affirmed.

### B. Substantial evidence supports the ALJ's RFC analysis.

Plaintiff's second argument essentially reiterates how the medical evidence supports a finding that she is totally disabled. For the reasons stated earlier, and because Plaintiff did not challenge the ALJ's credibility finding, the Court recommends a finding that the ALJ's decision is supported by substantial evidence and should be affirmed.

### V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 13) and motion to remand (docket no. 14) be DENIED; that Defendant's motion for summary judgment (docket no. 16) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                                /s/
                                        Dennis W. Dohnal
                                        United States Magistrate Judge

Date: <u>October 12, 2011</u>
Richmond, Virginia